IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| April G. Clayton, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:17-cv-1186-BHH |
| v. | ) | |
| | ) | **ORDER** |
| IFA Rotarion, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon Plaintiff April G. Clayton's ("Plaintiff" or "Clayton") complaint against Defendant IFA Rotarion ("Defendant" or "IFA"), alleging claims for (1) race discrimination in violation of Title VII of the Civil Rights Act of 1967 ("Title VII") and 42 U.S.C. § 1981; (2) retaliation in violation of Title VII and § 1981; (3) wrongful termination in violation of § 1981; and (4) wrongful termination. (ECF No. 1-1 at 11-17.) Defendant filed a motion for summary judgment, and the matter was referred to a United States Magistrate Judge for initial review, in accordance with 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). On November 27, 2018, Magistrate Judge Mary Gordon Baker issued a Report and Recommendation, outlining the issues and recommending that the Court grant Defendant's motion for summary judgment as to Plaintiff's race discrimination and wrongful discharge claims but deny Defendant's motion as to Plaintiff's retaliation claim. Both parties filed objections to the Magistrate Judge's Report, and the matter is ripe for review. For the reasons set forth herein, the Court adopts the Magistrate Judge's Report and grants in part and denies in part Defendant's motion for summary judgment.

**BACKGROUND**

In May 2013, Plaintiff, who is a black female, began working for Defendant as a temporary employee. On June 13, 2014, during her temporary employment, Plaintiff gave birth to a baby girl. According to Plaintiff, no one at IFA knew about her pregnancy other than Production Supervisor Anthony Brabham ("Mr. Brabham").

On or about August 25, 2014, Defendant hired Plaintiff as a permanent employee working under the supervision of Mr. Brabham. Plaintiff's infant daughter passed away on September 1, 2014, and Plaintiff took two days of bereavement leave under Defendant's Bereavement Leave Policy, which provides employees up to three days of paid leave due to the death of an immediate family member. Pursuant to the Bereavement Leave Policy, employees must "submit proof of the necessity for Bereavement Leave upon returning to work." (ECF No. 27-8.) Specifically, employees must "provide verifiable documentation (death certificate, newspaper article, note from funeral home or church) illustrating [their] relationship with the deceased," and the employee's name must be visible on the document. (*Id.*) Plaintiff claims that Rebecca Hoffman ("Ms. Hoffman"), Human Resources Generalist at the time, informed her that an obituary was sufficient documentation under the policy. Plaintiff claims that she provided Ms. Hoffman with a copy of the memorial program from her daughter's funeral and that Ms. Hoffman made a photocopy of the program. According to Plaintiff, Ms. Hoffman accepted the program as adequate documentation. Although Plaintiff claims she provided Ms. Hoffman with both the front and back pages of the program, Defendant claims Plaintiff provided only the front cover, which states: "In Memory of Onyia Mercedes Ashe," (hereinafter "Baby Ashe"), "June 13, 2014–September 1, 2014." (ECF No. 27-1 at 80:11–18; ECF No. 27-7.) The back cover

states that Baby Ashe "leaves behind mother April Clayton." (ECF No. 29-2 at 45.) Plaintiff received pay for her two days of bereavement leave per Defendant's policy. (ECF No. 27-1 at 97:10–15.)

In October of 2014, Plaintiff transferred to a team under the supervision of Bill Goss ("Mr. Goss"). On or around October 6, 2014, after joining Mr. Goss's team, Plaintiff requested four hours of personal time off ("PTO") for October 22, 2014. (ECF No. 27-4.) On or around October 13, 2014, a coworker informed Plaintiff that a manager had referred to Plaintiff as a "slow black worker." (ECF No. 29 at 7; ECF No. 27-1 at 128:25–129:4.) Although Plaintiff did not know the name of the manager who made this remark, Plaintiff knew his face and confirmed that he was not one of her supervisors. (ECF No. 27-1 at 146:10–25.) Plaintiff claims that she reported this comment the same day, October 13, 2014, to a supervisor and to someone in Human Resources named "Debbie." (*Id.* at 148:1–24.) According to Plaintiff, Defendant did nothing in response to her complaint because Plaintiff still saw the individual who made the comment on the floor. (*Id.* at 129:12–17.)

In early October, Plaintiff claims she told Human Resources that she was going to call the South Carolina Department of Labor, Licensing, and Regulation ("LLR") and report Defendant for failing to display the appropriate labor posters in the workplace. (ECF No. 1-1 ¶¶ 28–29; ECF No. 29 at 6–7; ECF No. 27-1 at 124:17–23.) Plaintiff claims that she reported the violation to the LLR. (Dkt. No. 1-1 ¶ 29.)

Around October 15, 2014, in response to the PTO request that Plaintiff submitted on October 6, 2014, Mr. Goss informed Plaintiff that she did not have any available PTO, but could use vacation time. (ECF No. 27-1 at 105:25–106:6, 107:7–13; Dkt. No. 27-4.)

3

Plaintiff claims that she had recently checked her PTO and had available hours, and she asserts that she informed Mr. Goss he was mistaken, which prompted him to initiate further review of Plaintiff's attendance and leave records.  (ECF No. 27-1 at 106:3–6.)

According to Defendant, upon reviewing Plaintiff's attendance records, Ms. Hoffman realized that Plaintiff had submitted insufficient documentation in support of her bereavement leave.  (ECF No. 27 at 2-3.)  Specifically, the front cover of the memorial program did not indicate any relationship between Plaintiff and the deceased, and Ms. Hoffman was not aware that Plaintiff had recently given birth.  (*Id*.; ECF No. 27-1 at 78:9–16.)

On October 16, 2014, Plaintiff met with Ms. Hoffman to discuss her available leave, and Ms. Hoffman confirmed that Plaintiff only had vacation time available.  (ECF No. 27-1 at 107:15–108:19.)  According to Defendant, Ms. Hoffman also explained to Plaintiff that she needed to submit complete documentation in support of her bereavement leave per Defendant's policy, and that she would be suspended until she did so.  (ECF No. 27 at 2–3; ECF No. 27-9.)  Plaintiff acknowledges that she and Ms. Hoffman discussed her vacation time during their meeting, but Plaintiff claims they did not discuss her bereavement leave or the documentation in support of it, and no one else was present during the meeting on October 16, 2014.  (ECF No. 27-1 at 119:3–120:25.)

According to Plaintiff, when she arrived at work on October 17, 2014, an employee told her that she had been suspended.  (*Id*. at 119:3–120:25.)  Plaintiff claims she did not know the reason for her suspension and that she did not contact Human Resources to figure out the reason for her suspension.  (*Id*. at 121:5–24.)  On October 22, 2014, Plaintiff received a letter from Ms. Hoffman dated October 20, 2014, explaining that Plaintiff's

4

employment would be terminated if she did not submit additional documentation in support of her bereavement leave by October 22, 2014. (ECF No. 27-9; ECF No. 27-1 at 120:13–121:4.) Thus, Plaintiff did not receive Ms. Hoffman's letter until the deadline prescribed by Defendants to submit the appropriate paperwork.

Plaintiff did not submit any further documentation to Ms. Hoffman. Plaintiff claims she did not submit another copy of the memorial program because her bereavement leave had been approved and paid a month prior, and Plaintiff felt the suspension was the result of her more recent complaints about the racial remark and the labor posters. (ECF No. 27-1 at 124:10–23.) Plaintiff's employment was terminated. (ECF No. 27 at p. 4.)

On January 29, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation based on race. Plaintiff received her right to sue letter from the EEOC on March 4, 2017, and filed this action on March 28, 2017, in the South Carolina Court of Common Pleas, Charleston County. On May 5, 2017, Defendant removed the case to this Court.

## **STANDARDS OF REVIEW**

### I.      The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). In the absence of specific

objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

II.     **Federal Rule of Civil Procedure 56**

A court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## **ANALYSIS**

In her Report, the Magistrate Judge explained the proper framework for considering a claim of race-based discrimination under Title VII[1] and found that Plaintiff failed to

---

[1] As the Magistrate Judge explained, a Plaintiff may establish a discrimination claim either by direct evidence or pursuant to the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Cassity v. Green*, 749 F. Supp. 2d 380, 402 (D.S.C. 2010) (citing *Taylor v. Va. Union. Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*), abrogated on other grounds, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). In the absence of direct evidence of discrimination, a plaintiff may establish a claim using the *McDonnell Douglas*

6

establish a *prima facie* case because she did not produce evidence that Defendant terminated her employment *because* of her race. In so finding, the Magistrate Judge noted that the only employees Plaintiff identified as being treated more favorably are also part of the same protected class. Thus, the Magistrate Judge concluded that Plaintiff failed to demonstrate that employees outside the protected class were treated more fairly.

Next, with respect to Plaintiff's retaliation claim in violation of Title VII and § 1981,[2] the Magistrate Judge found genuine issues of material fact as to the causal connection between Plaintiff's complaint about a racially-charged remark and her termination,[3] which

---

burden-shifting scheme, which requires a plaintiff to first demonstrate a *prima facie* case of discrimination. If a plaintiff succeeds in establishing a *prima facie* case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *see also Hux v. City of Newport News*, 451 F.3d 311, 314-15 (4th Cir. 2006). If the defendant does so, then the ultimate burden falls on the plaintiff to establish "that the legitimate reasons offered by the defendant were not its reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 142. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

To establish a *prima facie* case of race-based discrimination, a plaintiff must show that: "[she] is a member of a protected class; (2) [she] was qualified for [her] job and [her] job performance was satisfactory; (3) [she] was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 133 (4 th Cir. 2002). In short, a plaintiff must show that she suffered an adverse employment action "because of her race." *Ruffin v. Lockheed Martin Corp.*, 659 F. App'x 744, 746 (4th Cir. 2016).

[2] As the Magistrate Judge explained, to establish a *prima facie* case of retaliation in violation of Title VII, a plaintiff must prove "(1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (internal quotation marks and citations omitted). If a plaintiff establishes a *prima facie* case of retaliation by a preponderance of the evidence, then the burden shifts to the defendant to rebut the presumption of retaliation by articulating non-retaliatory reasons for its actions. *Marzett v. Charleston Cty. Sch. Dist.*, No. 2:14-CV-3932-RMG-MGB, 2017 WL 1274254, at *10 (D.S.C. Jan. 27, 2017), adopted, No. 2:14-CV-03932-RMG, 2017 WL 589110 (D.S.C. Feb. 14, 2017), aff'd, 697 F. App'x 186 (4th Cir. 2017) (referencing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998)). A plaintiff then bears the ultimate burden of proving that such reasons are pretext for retaliation. *Id.*

[3] The Magistrate Judge determined that Plaintiff's complaint to Human Resources and LLR about Defendant's alleged failure to display the proper labor posters does not challenge an employment practice made unlawful under Title VII. Thus, the Magistrate Judge found that Plaintiff's complaint about the labor posters does not constitute protected activity for purposes of her retaliation claim and is more properly considered in connection with her wrongful termination claims.

7

occurred shortly after her complaint. In other words, the Magistrate Judge found genuine issues of material fact as to whether Defendant's justification for terminating Plaintiff's employment was a pretext for retaliation based on Plaintiff's earlier complaint to Human Resources about a racial remark.

Finally, the Magistrate Judge agreed with Defendant that Plaintiff's claims for wrongful termination in violation of § 1981 both fail because Plaintiff has other available statutory remedies.

In her objections to the Magistrate Judge's Report, Plaintiff first incorrectly asserts that the Magistrate Judge recommends dismissal of all of her claims. To the contrary, as explained above, the Magistrate Judge recommends dismissal of Plaintiff's first, third, and fourth causes of action but not Plaintiff's second cause of action for retaliation.

Next in her objections, Plaintiff reiterates factual allegations copied directly from her response in opposition to Defendant's motion for summary judgment. Specifically, pages one and two of her objections correspond to portions of pages two and three of her response. (*Cf.* ECF Nos. 29 at 2-3 and 39 at 1-2.) Plaintiff's objections then include a standard of review section on pages three and four, setting forth the general legal principles applicable to the review of a Report and Recommendation and a motion for summary judgment.

On page four of her objections, Plaintiff asserts that the Magistrate Judge failed to set forth the facts in the light most favorable to Plaintiff. (ECF No. 39 at 4.) Plaintiff takes issue with the Magistrate Judge's citation to more records provided by Defendant than by Plaintiff and states that the Magistrate Judge failed to set forth essential facts as to Plaintiff's claims for race discrimination and wrongful discharge.

After review, the Court finds that Plaintiff's objections fail to point to any facts that the Magistrate Judge failed to properly consider or that somehow alter the Magistrate Judge's analysis. With respect to her discrimination claim, Plaintiff admits that she cannot show that other employees were treated how she was treated, which the Magistrate Judge acknowledged, and she asserts that "[a] genuine issue of material fact exists that the Plaintiff was the only employee treated to termination for an alleged violation of the bereavement policy when she properly presented the paperwork to Human Resources." (ECF No. 39 at 5.) What Plaintiff's objection overlooks, however, is the fact that Plaintiff still fails to show that she was terminated *because of her race*. Ultimately, the Court agrees with the Magistrate Judge that Plaintiff has failed to establish a *prima facie case* of racial discrimination, and the Court overrules Plaintiff's objection as to this claim.

Likewise, the Court agrees with the Magistrate Judge that Plaintiff's wrongful termination claims both fail. Plaintiff asserts in her objections that she complained to Defendant about its failure to post proper posters, and that she was terminated not long after her complaint. Indeed, the Magistrate Judge noted these facts. Ultimately, Plaintiff's objection is entirely conclusory, and the Court finds that Plaintiff fails to show any legal or factual error in the Magistrate Judge's analysis. Rather, as the Magistrate Judge concluded, Plaintiff's claim for wrongful termination in violation of § 1981 fails because there is a statutory remedy through which Plaintiff may seek relief. *See Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 428 (D.S.C. 2014) (finding that a statutory remedy precluded a wrongful termination claim where the public policy claims were based on the same allegations as Plaintiff's Title VII claims). Likewise, Plaintiff's fourth cause of action–alleging wrongful termination based on Plaintiff's complaint to the LLR about

Defendant's failure to display the proper labor posters–fails because Plaintiff has an available alternative statutory remedy under S.C. Code Ann. § 41-15-520, which sets forth a complaint process for employees who believe they have been discharged or discriminated against in violation of § 41-15-510.[4] Overall, the Court finds Plaintiff's objections without merit and agrees with the Magistrate Judge that Defendant is entitled to summary judgment on Plaintiff's first, third, and fourth causes of action.

Defendant also filed objections to the Magistrate Judge's Report, specifically objecting to the Magistrate Judge's recommendation that the Court deny summary judgment as to Plaintiff's second cause of action for retaliation. Defendant states: "The recommendation to deny summary judgment on the retaliation claim hinges on the conclusion that Plaintiff has created a question of fact with regard to (a) whether Rebecca Hoffman had knowledge of Plaintiff's complaint and (b) whether her termination was pretext for retaliation." (ECF No. 40 at 2.) Defendant asserts that there is no evidence that Ms. Hoffman knew of Plaintiff's complaint, and that Plaintiff cannot establish that the reasons for her termination were pretext for retaliation. After a review of the record, the Court is not convinced by Defendant's arguments.

Ultimately, the Court agrees with the Magistrate Judge that, viewing the facts in the light most favorable to Plaintiff, there is at the very least a question of fact as to whether Defendant's decision to suspend and terminate Plaintiff's employment was causally connected to her complaint about a racial remark. As the Magistrate Judge explained, the Fourth Circuit has held that "very little evidence of a causal connection is required to

---

[4] Section 41-15-510 makes it illegal for an employer to discharge an employee for filing a complaint relating to state rules and regulations regarding occupational safety and health. S.C. Code Ann. § 41-15-510.

establish a *prima facie* case of retaliation." *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012) (internal citations omitted); *see also Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 335 (4th Cir. 2018) (noting that establishing a causal relationship at the *prima facie* stage "is not an onerous burden"). Defendant objects that there is no evidence that Ms. Hoffman knew about Plaintiff's complaint, but the Court finds there is at least an issue of fact on this question. Although Plaintiff admits she did not report the remark directly to Ms. Hoffman, she asserts that she informed a supervisor and someone in Human Resources. Ms. Hoffman was a Human Resources Generalist, and the Court finds that Plaintiff's assertion that she notified Human Resources of the remark is sufficient to create a question of fact as to Ms. Hoffman's knowledge.

More importantly, the Court agrees with the Magistrate Judge that the close temporal proximity between Plaintiff's complaint about the racial remark and her termination creates a jury question regarding causation. Plaintiff asserts that she complained about the remark on or around October 13, 2014, and it appears that she was suspended four days later and terminated approximately nine days later. *See, e.g., Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (finding one month between the protected activity and retaliation sufficient to establish a jury question regarding causation); *Strothers*, 895 F.3d at 337 (finding that a lapse of nine days "is well-within what this Court has found to be a causally significant window of time").

Likewise, with respect to Defendant's alleged legitimate, non-discriminatory reason for suspending and terminating Plaintiff's employment–namely, that she failed to comply with Defendant's Bereavement Leave Policy–the Court fully agrees with the Magistrate Judge that, when viewed in the light most favorable to Plaintiff, the evidence creates a jury

question as to whether the given reason is but a pretext for retaliation. Stated plainly, Plaintiff asserts that she gave Ms. Hoffman a copy of the front and back pages of the memorial program from her daughter's funeral, and that Ms. Hoffman accepted the program as sufficient under Defendant's Bereavement Leave Policy. Indeed, the record reflects that Plaintiff was paid for the two days of bereavement leave. Plaintiff asserts that she did not learn Defendant's stated reason for her termination until she received the letter from Ms. Hoffman on October 22, 2014. The letter was dated October 20, 2014, and it gave Plaintiff only two days to provide additional documentation to support the bereavement leave that Plaintiff took more than one month before, and for which Plaintiff had already been paid.

Defendant objects that there is no evidence that its stated reason for Plaintiff's termination is false. Defendant further objects that even if Plaintiff received the letter on October 22, 2014, she "could have submitted documentation on October 22, 2014," but did not do so. What Defendant's objection disregards, however, is the fact that Plaintiff claims she *had already provided* Defendant with the proper documentation and that Defendant had already approved her bereavement leave, such that Ms. Hoffman's subsequent letter was simply a "post hoc rationalization" for Plaintiff's suspension and termination.

In all, the Court finds that there are clearly questions of fact for a jury, such as whether Plaintiff provided Defendant with the appropriate documentation following the death of her daughter; when Ms. Hoffman told Plaintiff that the documentation Plaintiff provided was insufficient; and whether Defendant's stated justification for terminating Plaintiff was not its real reason but rather a pretext for retaliation. Therefore, the Court overrules Defendant's objections.

**CONCLUSION**

Based on the foregoing, it is hereby ordered that the Magistrate Judge's Report (ECF No. 38) is adopted and incorporated herein; Plaintiff's objections (ECF No. 39) are overruled; Defendant's objections (ECF No. 40) are overruled; and Defendant's motion for summary judgment (ECF No. 27) is granted as to Plaintiff's first, third, and fourth causes of action but denied as to Plaintiff's second cause of action.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce H. Hendricks
United States District Judge

March 25, 2019
Charleston, South Carolina